**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| VINCENT E. YORK, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.  21-cv-03978 |
| vs. | ) | |
| | ) | Honorable Jeremy C. Daniel |
| JOSE SARABIA, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES, Plaintiff, by and through his attorneys, Jeffrey J. Neslund of the LAW OFFICES OF JEFFREY J. NESLUND and Robert L. Robertson of ROBERTSON DURIC, submit the following Memorandum in Opposition to the Defendant's Motion for Summary Judgment, and in support thereof, states as follows:

**INTRODUCTION**

The desire or perceived need to expeditiously resolve media cases in the name of justice can, ironically, lead to injustice. Plaintiff Vincent York was arrested, detained and prosecuted on two different occasions in connection with the death of Brian Wilson, who was related to an influential North Chicago alderwoman. The first was for failing to report an accident in violation of 625 ILCS 5/401(b), despite the fact York had three separate conversations with 911 operators immediately after the incident. After that initial criminal case was blown up and dismissed once York's defense lawyers obtained these 911 calls, Vincent York was charged with the murder of Wilson. This second criminal case was dismissed after a Lake County Judge took the virtually unprecedented action of dismissing the murder indictment against York because York's due process

1

rights were violated by the manner in which the case was presented to the Grand Jury. While pressure can make a diamond, it has also burst more than a few pipes.

Defendant North Chicago Police Detective Jose Sarabia was the lead investigator in the death of Brian Wilson and was the man tasked with investigating and successfully resolving this heater media case. He is also the last one standing, left to explain otherwise inexplicable acts that led to Vincent York being charged multiple times in connection with the same incident, serving substantial time in jail, and eventually being freed without any real explanation as to how it all happened. Somewhat predictably, Defendant Sarabia uses every means at his disposal in an attempt to escape liability for his actions, including: 1.) forcing all of his investigative actions under the broad canopy of Grand Jury testimony to take advantage of absolute testimonial immunity; 2.) recasting himself from lead investigator to simple minimally involved worker bee; and 3.) relying on outdated arguments that attempt to lay all blame at the feet of the LCSAO for this prosecution. None of these tactics, however, are supported by the law or the factual record developed in this case.

Here, Defendant's summary judgment motion should be denied where there is a plethora of factual questions as to the level of Sarabia's involvement and the details of the criminal investigation that led to false charges being levied against Vincent York[1]. Inexplicably, Sarabia made the decision to present this case without the 911 calls – the very calls that resulted in a No Bill when presented a second time to the Grand Jury. Throughout there are questions of material facts as to who made the presentation to the LCSAO, where it was made, how the evidence was presented and what, if anything, was told to prosecutors about the 911 calls and Waukegan municipal numbers on York's phone. There are also questions of fact regarding probable cause to

---

[1] With the dismissal of Det. Mueller as a defendant, Plaintiff will dismiss his conspiracy claim.

arrest York for an 11-401(b) offense where he lacked knowledge that the accident involved another individual and fled the scene because his own life was in danger.

Eight (8) months after prosecutors dismissed the Failure to Report charges, York was re-indicted, this time for First degree Murder of Wilson based on the false and misleading grand jury testimony of Det. Sarabia. Defendant's request for summary judgement based on absolute immunity for his lies in the grand jury should be denied as fabricated or falsified evidence will always violate the accused's constitutional rights, even if the detective's testimony was a factual predicate for Plaintiff's claims. *Avery v. City of Milwaukee*, 847 F.3d 433, 441–42 (7th Cir. 2017). This Court should not reward Det. Sarabia's flagrant violations of York's constitutional rights that caused the unlawful detention and prosecution for crimes Det. Sarabia knew Vincent York did not commit.

## **FACTUAL BACKGROUND**

Plaintiff incorporates his Response to Defendants Rule 56.1(a)(3) Statement of Uncontested Facts (Dkt. #89), and Plaintiff's Rule 56.1(B)(3)(c) Statement of Additional Facts (Dkt. #88), hereinafter referred to as "SOAF."

## **SUMMARY JUDGMENT STANDARD**

At summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Ezell v. Potter,* 400 F.3d 1041, 1046 (7th Cir. 2005). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories and admission on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law." *Schuster v. Lucent Technologies, Inc.,* 327 F.3d 569, 573 (7th Cir. 2003) (quoting F.R.C.P. 56(c)).

3

## ARGUMENT

**A. Det. Sarabia's is not entitled to absolute immunity as his misconduct extends beyond his testimony to the Grand Jury**

Defendant attempts to sound the "death knell" of Plaintiff's Fourth Amendment claims by sweeping all of his tortious conduct under the absolute witness immunity rug. The fatal flaw in Defendant's oversimplified argument is that it fails to accept that Defendant Sarabia's misconduct extended beyond his actual testimony before the Grand Jury. Throughout, Detective Sarabia seeks to shed the cloak of lead investigator in this debacle of injustice and shift all responsibility for the false charges levied against Mr. York unto the LCSAO. In fact, the initial charging decision here was based on Sarabia's own oral presentation of the case to the LCSAO Felony Review Unit. (SOAF No. 29, 32, 33). Defendant's hackneyed "police do not prosecute, prosecutors do" argument has been repeatedly rejected. *See, e.g., Mahoney v. Kesery*, 976 F.2d 1054 (7th Cir. 1992) *citing Jones v. City of Chicago*, 856 F.3d 895, 993-94 (7th Cir. 1988) ("police officer who procures a prosecution by lying to the prosecutor or to the grand jury can be sued for the consequences of that prosecution.").

Defendant's argument that his role was inconsequential is belied by the record, which shows genuine issues of fact that preclude summary judgment. Specifically, Det. Rollins established it was Det. Sarabia as the lead investigator who made the charging presentation to the LCSAO Felony Review Unit; in fact, Sarabia did so in person. (SOAF No. 32, 33). Rollins described how the LCSAO Felony Review ASA came to the station in person because this was a "hot" media case and how Det. Sarabia led a "roundtable" presentation of this case. Det. Sarabia cannot simply ignore this detailed testimony about his critical involvement and simply hide behind his self-serving denials that he made any such presentation or had any contact with the LCSAO's Felony Review Unit. (SOAF No. 31).

4

Besides the questions of fact regarding Sarabia's role in charging York with false criminal charges, there are further questions of material fact about what evidence Sarabia actually presented to the LCSAO regarding York and his calls to 911. Immediately after the incident, York called 911 at 10:02 p.m. and reported that Wilson pulled a gun and shot at York's car in front of the Citgo gas station. (SOAF No. 2). York had two additional conversations with the 911 dispatcher at 10:05 p.m. and 10:10 p.m. where York again explained Wilson shot at him and that he (York) drove his car in a circle in an attempt to avoid getting shot. (SOAF No. 3, 5). When the dispatcher began questioning York about why Wilson had a bullet hole in his head (Wilson did not and was not even shot), York stated he was going to consult with an attorney. (SOAF No. 6).

The circumstances surrounding York's calls to 911 and Sarabia's knowledge as an experienced North Chicago Detective further add to the factual soup that precludes summary judgment. As a veteran North Chicago detective, Sarabia knew that any 911 calls made by York could have gone to the Waukegan Call Center. First, this incident took place on the border between Waukegan and North Chicago and Sarabia knew that 911 calls often go to the neighboring municipality depending on the location of the caller. (SOAF No. 8). Second, Det. Sarabia also knew that all the initial calls to 911 went to the Waukegan Call Center as Waukegan police, fire fighters, and paramedics were the first to respond. (SOAF No. 10). Third, the Record demonstrates that a Waukegan 911 dispatcher actually called North Chicago's dispatch center to tell them they had a subject down and reports of shots fired at the gas station, to which the North Chicago dispatcher replied, "*We do? Are you telling us or asking us, we didn't get any calls*" (SOAF No 11, Audio Track 1). Besides all of this information demonstrating that there were critical calls made to the Waukegan Call Center, Det. Sarabia obviously knew about Waukegan's initial role in the investigation. Sarabia himself sent other detectives to Waukegan to obtain all the initial police reports, body-worn camera

footage and dash-cam videos. Det. Sarabia, however, inexplicably never requested the Waukegan 911 calls or the 911 CAD reports, which documented York's conversations with the 911 dispatcher. (SOAF No. 13 ).

Detective Sarabia's attempt to minimize his role in the investigation is also rebutted by his active role in other aspects of the investigation. Det. Sarabia and other North Chicago Detectives interviewed three (3) eyewitnesses from the Citgo gas station, Jesse Sanchez, Felix Herrera and Jose De La Mora. Each of these witnesses confirmed Wilson possessed a handgun and fired shots in the air and at York. (SOAF No. 14). Sarabia also knew that a shell casing was also recovered from the scene behind Laquita York's car and preliminary gunshot residue was found on Wilson's hand and face during his autopsy. (SOAF No. 15, 16). Sarabia also knew that another witness heard the gunshots and saw Laquita York who was with Wilson striking Plaintiff's car with a baseball bat. (SOAF No. 17).

If not already apparent, the critical nature of York's calls to 911 were obvious to Detective Sarabia after York tuned himself and set forth the events of that night including his multiple calls to 911. York explained how Wilson began to shoot at him, how York then dove back into his car, ducked down and pressed the gas with his right hand and held the bottom of the steering wheel with his left. (SOF No. 21). York relayed that he lost control of the car as it traveled in circles and felt it pop the curb and hit a metal sign. (SOF No. 22). York fled the scene because he was in fear for his life, not because he was involved in a personal injury accident. (SOAF No. 1,4). York was repeatedly told by Det. Sarabia and his partner that the 911 calls were "super important" and "most important" thing for him. (SOAF No. 21). York insisted he called 911 and offered to print the phone logs from his phone. (SOAF No. 20, 24). York even consented to a search of his phone that showed two Waukegan municipal phone numbers that called York back minutes after the incident.

(SOAF No. 25). Det. Sarabia could not explain why he did not request or recover the Waukegan 911 calls after he saw the Waukegan municipal numbers on York's cell phone and knowing all this information. (SOAF No. 27).

The actions of the lead detective in selectively avoiding the critical piece of evidence on the key element of the criminal charge being presented to the LCSAO raises a myriad of factual questions regarding his actions, intent, and motivation in trying to close this media case. These questions of fact about what Det. Sarabia presented to the LCSAO about York's calls preclude summary judgment. Viewing the evidence and all reasonable inferences in the light most favorable to the Plaintiff, a jury may conclude Det. Sarabia is trying to shift all communication and interaction with felony review to Det. Rollins to escape responsibility for own misconduct. What better way to avoid liability in a civil rights lawsuit than to blame the critical presentation of evidence on the retired detective. The same jury could also conclude that Sarabia intentionally avoided the issue of York calling 911 in order to falsely support charging him with leaving the scene; York would not be the first person sacrificed in order to quickly close a case that was drawing media attention. Such issues such as Sarabia's motivation and state of mind are for a jury to decide. *Guzell v. Hiller,* 223 F.3d 518, 520 (7th Cir. 2000)). ("police must act reasonably on the basis of what they know," and "if what they know" includes information that calls into question probable cause, they cannot close their eyes to additional information); *Miller v. Gonzalez*, 761 F.3d 822, 828 (7th Cir. 2014). There is no credible way for Sarabia to hide these questions of fact or portray this case as one that only involved his testimony before the Grand Jury. Defendant's motion should be denied.

**B. Det Sarabia is not entitled to absolute immunity for lying to the grand jury**

Defendant's argument that Sarabia is entitled to absolute immunity for his grand jury testimony without any exception is flawed and outdated. This same argument for absolute immunity for police testimony was rejected by the 7th Circuit in *Avery v. City of Milwaukee*, 847 F.3d 433, 441–42 (7th Cir. 2017), wherein the Court explained that such immunity arguments were "flawed" as fabricated or falsified evidence will always violate the accused's constitutional rights. *Id*. Defendants' argument has also been roundly rejected by courts that came in the wake of *Avery*. *See*, *e.g*., *Johnson v. Winstead*, 447 F. Supp. 3d 715, 720 (N.D. Ill. 2019); *Horton v. City of Rockford*, No. 18 C 6829, 2019 WL 3573566, at *5 (N.D. Ill. Aug. 6, 2019); *see also Montoya v. Vigil*, 898 F.3d 1056, 1070 (10th Cir. 2018).

Here, it is undisputed Defendant Sarabia's testified on October 16, 2019, that Plaintiff did not call 911. That testimony is demonstratively false. Sarabia also testified he found "no indication" of any such calls on York's cell phone. This was also demonstratively false as Sarabia knew of the multiple calls from a Waukegan municipal phone number minutes after the accident that were displayed on York's phone. (SOAF No. 26, 39). To seal the Plaintiff's fate further with this false narrative, Sarabia testified he "checked the call logs" knowing full well that he never obtained the relevant Waukegan call logs. (SOAF No. 13, 27, 40).

Det. Sarabia's perjury was so obvious that prosecutors sent him back the grand jury a second time once York's criminal attorneys subpoenaed the Waukegan 911 information. To avoid the possibility of Sarabia joining a "Brady List," the legal equivalent of a scarlet letter branded on an officer for untruthful testimony, prosecutors had Sarabia return to the Grand Jury. Ironically, the prosecutors had Sarabia explain how 911 calls near the border often go to the neighboring municipality's dispatch center - something that he knew from experience happened frequently.

(SOAF No. 8, 42). More importantly, these were the exact facts that demonstrate the highly suspicious course of Sarabia's initial investigation, which resulted with a heater case being quickly resolved with the arrest and prosecution of Vincent York on false charges. Armed with the truth about York's 911 calls, the second Grad Jury quickly issued a "No bill." (SOAF No. 43).

Like the officers in *Avery,* Sarabia cannot retroactively immunize himself from liability by repeating his lies under oath to a grand jury. Although Sarabia denies any communication with the LCSAO felony review unit, a jury could reject that testimony and find that Sarabia provided the same false version of events to Felony Review that he told to the first Grand Jury regarding the 911 calls, York's phone and his search for the 911 call logs. Since that version of events is vigorously contested by the Plaintiff, summary judgement is inappropriate.

In a similar vein, Det. Sarabia should not be entitled to absolute immunity for his perjured testimony before the third Grand Jury on July 22, 2020, that secured the murder indictment in violation of York's due process rights. As Judge Shanes stated in the order dismissing the indictment, "A denial of due process may occur "if the prosecutor deliberately or intentionally misleads the grand jury, uses known perjured or false testimony, or presents other deceptive or inaccurate evidence." *People v. DiVencenzo,* 183 Ill. 2d 239, 257 (1998). Det. Sarabia again gave false testimony when he stated he knew "nothing else about the gunshot" even though he knew for a fact from his own investigation the shot came from Wilson's own hand. (SOAF No. 48-52, 55).

Following the rationale in *Avery* and *Johnson v. Winstead,* it is Det. Sarabia's fabricated testimony that he knew "nothing else about the gunshot," that is the factual predicate for York's Fourth Amendment claims for false arrest and unlawful detention regarding the murder charges. *Avery,* 847 F.3d at 442 (detectives false testimony was the factual predicate for Avery's constitutional claims). York's due process violation that resulted in dismissal of the murder

9

charges was not complete until the false testimony was introduced at the Grand Jury, resulting in his subsequent arrest and detention. As Judge Shanes recognized, it was the introduction of this false evidence that made the grand jury proceeding unfair. (SOAF No. 54, 55). As the Seventh Circuit acknowledged in *Avery,* "he who creates the defect is responsible for the injury that the defect foreseeably causes later. *Id. citing Fields II,* 740 F.3d at 111-12.

Nor are the policy reasons articulated in *Rehberg v. Paulk* for absolute immunity present here. There was no fear Detective Sarabia would be "reluctant" to testify or "shade his testimony" in favor of the Plaintiff when he had already testified in two prior grand jury proceedings in this case. *Rehberg,* 132 S. Ct. at 1499. If anything, the motivation here was to do the exact opposite – first to close out his media case and then to save his own skin from a Brady List. Here it was Det. Sarabia's false testimony that deprived the Grand Jury of critical evidence in violation of Yorks due process rights, not any hypothetical "fear of retaliatory litigation." To the contrary, it is the truth-seeking process of the criminal justice system that is in jeopardy if there are no consequences for police who commit perjury with the goal of securing a false indictment against someone they know is innocent. Given the unique facts of this case, summary judgement should be denied.

## C. Questions of fact regarding probable cause preclude summary judgment

Defendant's argument that the return of an indictment from the first grand jury for the violation of 625 ILCS 5/11-401(b) provides a "felling blow" to Plaintiff's claims is without merit. Defendant's outdated characterization that *any* indictment - presumably even one predicated on a false narrative, fabricated evidence or outright perjury - breaks the causal connection and precludes liability for officers, is incorrect. The mere fact that an indictment is obtained based on Detective Sarabia's false narrative does not shield him from liability for the false testimony and misconduct that secured that very indictment. A police officer who procures a prosecution by lying to the

prosecutor **or to the grand jury** can be sued for the consequences of the prosecution. *Mahoney v. Kesery*, 976 F.2d 1054 (7th Cir. 1992) *citing Jones v. City of Chicago*, 856 F.3d 895, 993-94 (7th Cir. 1988)(*emphasis added*); *Rivera v. Guevara,* 319 F. Supp. 3d 1004, 1054–55 (N.D. Ill. 2018), *opinion clarified,* No. 12-CV-04428, 2018 WL 11469072 (N.D. Ill. May 17, 2018)see also W. Page Keeton *et al., Prosser and Keeton on the Law of Torts* § 119, at pp. 872–73 (5th ed. 1984).

Here, there is a genuine issue of fact as to whether there was probable cause as to the first indictment. The first grand jury indictment was based on Det. Sarabia's false testimony that he searched for 911 calls and that York's phone had "no indication" of any 911 calls. However, Det. Sarabia knew that York's phone contained more than "indications" of his 911 call, but actual Waukegan municipal numbers that corroborated York's statement that he called 911 to report the shooting. (SOAF No. 20, 26). In addition, Det. Sarabia knew York's calls to 911 regarding this incident went to neighboring Waukegan as such calls have done in the past. Still, Detective Sarabia chose not to obtain this readily available critical information that would have defeated probable cause. It is axiomatic that officers cannot ignore information at the tip of the officer's fingers that would negate the existence of probable cause. *Evans v. Gasca*, No. 14-CV-10518, 2016 WL 1407695, at *6 (N.D. Ill. Apr. 11, 2016). Questions of fact about who presented  this case to the LCSAO Felony Review Unit (Det. Rollins over the phone or Det. Sarabia at an in-person "roundtable") and what was presented, if anything,  regarding the 911 calls and the municipal numbers on York's phone preclude summary judgment.

Defendant's line in the sand argument fails to appreciate the application of the probable cause standard. An officer has probable cause if "the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information would warrant a prudent person in believing that the suspect had committed or was committing an offense." *Anderer v.*

*Jones*, 385 F.3d 1043, 1049 (7th Cir. 2004). Probable cause is measured at the time the seizure occurred, *United States v. Weir*, 703 F.3d 1102, 1104 (7th Cir. 2013), or at the time the charges were levied, *Holland v. City of Chicago*, 643 F.3d 248, 254 (7th Cir. 2011).

The question of probable cause is typically a jury question. *Sheik–Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1994); *Rogers v. City of Harvey*, No. 16-CV-05871, 2021 WL 1222896, at *3 (N.D. Ill. Mar. 31, 2021)   A jury must determine the existence of probable cause when there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993); *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1013–14 (7th Cir. 2006); *Baskerville v. Perez*, No. 15 C 3143, 2017 WL 4122632, at *5–8 (N.D. Ill. Sept. 18, 2017).

Initially, Defendants' position ignores that the "existence of probable cause or arguable probable cause depends, in the first instance, on the elements of the predicate criminal offense(s) as defined by state law." *Abbott v. Sangamon County*, 705 F.3d 706, 715 (7th Cir. 2013); *Rogers*, 2021 WL 1222896, at *3. Here, an essential element of failing to stop after a motor vehicle accident involving personal injury or death is that the motorist knows they were involved in an accident that involved another person. *People v. Digirolamo*, 179 Ill. 2d 116 (2013)(expressly holding that "section 11-401 requires that a motorist have knowledge that he or she was involved in an accident that involved another person."); *see also People v. Meuris*, 2016 IL App (2d) 140194 (2016)(reversing conviction for violation of 11-401 where defendant driver thought he hit a road sign or mile marker).

Defendant attempts to portray this situation as one of almost automatic probable cause, arguing that regardless of any 911 call  York violated the statute by not driving to the police station. Here, however, there is a genuine issue of fact for probable cause to arrest York for a violation of

625 ILCS 5/11-401 because there was no evidence that York knew the accident involved another person. In complete contradistinction to Defendant's authority, *People v. Villaneuva,* York left the scene under duress because Wilson was shooting at him and he feared for his safety, not because he knew he was involved in an accident. York then immediately called 911 to report the shooting and provided his name and location of the incident. The critical distinction for the purposes of 11-401 is that York lacked the knowledge that he struck Wilson because he ducked down, pushed the gas pedal with one hand and held the bottom of the steering wheel with the other to avoid getting shot. The situation here is much more akin to that in *People v. Meuris*, 2016 IL App (2d) 140194 (2016), as York thought he hit the curb and a metal sign. Viewing this record in the light most favorable to the Plaintiff, York fled the scene because Wilson was shooting at him and he lacked the essential element of knowledge required for an 11-401 offense.

Defendant retreats to the defense stronghold that there is no duty to search for or present exculpatory evidence. This ignores the well-known corollary principle that an officer "may not close his eyes to facts that would clarify the situation" and defeat probable cause. *Young,* 987 F.3d at 645 citing *McBride v. Grice,* 576 F.3d 703, 707 (7th Cir. 2009); *Tucker v. Lally*, No. 17 C 2331, 2020 WL 60205, at *5–7 (N.D. Ill. Jan. 6, 2020) (officers do "not have the luxury of burying their heads in the sand."). Officers are not permitted "to ignore the full context of the circumstances known to them." *Anderson,* 2015 WL 1538243, at *7 (*citing Guzell v. Hiller,* 223 F.3d 518, 520 (7th Cir. 2000)). This is especially so when the information at the tip of the officer's fingers would negate probable cause. *Evans v. Gasca*, No. 14-CV-10518, 2016 WL 1407695, at *6 (N.D. Ill. Apr. 11, 2016). In fact, even though probable cause may initially be present to permit the arrest of the plaintiff, that probable cause will not automatically support the commencement and continuation of criminal proceedings where it dissipates and the defendant's belief that the plaintiff committed

the crime becomes unreasonable. *Aleman v. Village of Hanover Park,* 662 F.3d 897, 904 (7th Cir. 2011) (finding no probable cause for arrest where police learned additional information that negated initial probable cause).

Here, Det. Sarabia closed his eyes to obvious evidence that would have negated any probable cause that York failed to report the accident. Sarabia was an experienced officer that knew that the incident occurred on the border of Waukegan and North Chicago and that 911 calls from such incidents often went to the Waukegan call center. Det. Sarabia also knew all the first responders were from Waukegan, which demonstrated that the initial 911 calls went to the Waukegan call center. (SOAF 9,10). York even described his conversation with 911 in detail and had conclusive evidence of these conversations on his cell phone, which was in the possession of the police. Det. Sarabia cannot simply turn a blind eye to such critical information. *Rogers*, at *4 (factual disputes precluded summary judgment on issue of probable cause, including that the plaintiff may have provided information to the defendants that questioned existence of probable cause). This is especially so where a simple clarifying call to Waukegan would have obliterated any hint of probable cause that York failed to report the accident. *Guzell*, 223 F.3d at 520 ("police must act reasonably on the basis of what they know," and "if what they know" includes information that calls into question probable cause, they cannot close their eyes to additional information). The critical nature of this easily accessible information cannot be understated, as conclusively demonstrated by the fact that a "no bill" was returned once the evidence of the 911 calls was properly presented to the second grand jury. Thus, there are questions of fact regarding the probable cause to arrest Plaintiff that preclude summary judgment. *Johnson v. Franks,* No. 08-4075, 2011 WL 841049, at *1–6 (C.D. Ill. Mar. 4, 2011) (denying summary judgment where probable cause

14

could not be established as a matter of law where officers had information that casted doubt on probable cause).

**D.  Det. Sarabia's significant role in the criminal prosecutions of Vincent York precludes summary judgment for Malicious Prosecution**

In his attempt to escape liability for malicious prosecution, Defendant returns to the old chestnut that police don't initiate criminal prosecutions, prosecutors do. Ignoring the undisputed fact that LCSAO charging decisions are based on the verbal presentation by detectives, Defendant Sarabia seeks to effectively abolish the tort of malicious prosecution as far as police officer defendants are concerned. This argument that only prosecutors prosecute has been repeatedly and routinely rejected for over a quarter of a century. *Ewing v. O'Brien*, 60 F. Supp. 2d 813, 818 (N.D. Ill. 1999) (noting Seventh Circuit has recognized malicious prosecution cases against police officers on multiple occasions). Defendant's argument inexplicably ignores the long-established precedent that a defendant is considered to have commenced criminal proceedings if he "initiated a criminal proceeding or his participation [was] of so active and positive a character as to amount to advice and cooperation." *Fabiano v. City of Palos Hills*, 336 Ill. App. 3d 635, 784 N.E.2d 258 (1st Dist. 2003) citing *Denton v. Allstate Insurance Co.*, 152 Ill. App. 3d 578, 583, 105 Ill. Dec. 471, 504 N.E.2d 756 (1986).

Defendant's argument also ignores the entire body of malicious prosecution case law which holds that an officer can be held liable for malicious prosecution when he plays a ***significant role*** in causing the prosecution. *Johnson v. Winstead,* 447 F. Supp. 3d 715, 721 (N.D. Ill. 2019) citing *Beaman v. Freesmeyer,* 131 N.E. 3d 488, 499 (2019)(recognizing person can be liable for malicious prosecution even if that person does not ultimately wield prosecutorial power or actively deceive prosecutors). Put more colloquially, officers will be held liable for malicious prosecution

if the officer got the ball rolling on the criminal prosecution of the plaintiff. *Newsome v. James*, 968 F. Supp. 1318, 1323 (N.D. Ill. 1997).

Lead Detective Sarabia repeatedly tries to minimize his role in this case by pointing to a variety of ancillary details – all of which attempt to conveniently place blame for any miscarriage of justice squarely at the feet of the LCSAO. That the LCSAO was the prosecuting agency and reviewed the evidence in this case themselves without undue pressure or influence does not shield Det. Sarabia from liability. The tort of malicious prosecution is routinely satisfied when a police officer provides false or incomplete information in any number of ways that leads to false charges against the plaintiff. A "police officer who procures a prosecution by lying to the prosecutor ***or to the grand jury*** can be sued for the consequences of the prosecution" under a theory of malicious prosecution. *Mahoney v. Kesery*, 976 F.2d 1054 (7th Cir. 1992) *citing Jones v. City of Chicago*, 856 F.3d 895, 993-94 (7th Cir. 1988)(emphasis added); s*ee also Mitchell v. City of Elgin*, No. 14 cv 3457, 2016 WL 492339, Feb. 9, 2016 (N.D. Ill. Blakey, J. presiding); *Petrovic v. City of Chicago*, No. 06 C 6111, 2008 WL 4286954, Sept. 16, 2008 (N.D. Ill. Guzman, J. presiding). A prosecutor's decision to charge, ***a grand jury's decision to indict***, a prosecutor's decision not to drop charges but to proceed to trial—none of these decisions will shield from liability for civil rights violations a police officer who deliberately supplied misleading information that influenced the decision. *Ewing*, 60 F. Supp. 2d at 818 (emphasis added); *Simon v. Northwestern University,* No. 15 cv 1433, 2016 WL 1622614 (April 22, 2016).

Recognizing the critical role of police investigations in charging decisions, the Illinois Supreme Court explained in *Beaman v. Freesmeyer,* 2021 IL 125617 (2021):

> "A prosecutor's decision to commence or continue a criminal action assumes that the prosecutor has received a full and fair report detailing a complete good faith investigation

intended to ascertain the identity of the person responsible for the crime. ***Where, however, an investigative team conducts a bad faith and incomplete investigation-designed to implicate a particular individual regardless of the evidence-the prosecutor is effectively prevented from fully exercising that independent judgment***.

*Id*. at para. 84 (emphasis added).

Here, there is a genuine issue of fact precluding summary judgment as a rational juror could reject Det. Sarabia's version of events that Det. Rollins was the sole detective who had contact with the LCSAO Felony Review Unit. Viewing the evidence here in the light most favorable to the Plaintiff, the decision to charge York with the initial felony of offense of leaving the scene was the result of Lead Detective Sarabia's "roundtable" presentation, which omitted any reference to York's 911 calls or the Waukegan municipal numbers on his phone. As the lead investigator, Det. Sarabia signed the criminal complaint against Plaintiff for violating 625 ILCS 5/11-401 despite his knowledge that a.) the 911 calls for this incident went to Waukegan, b.) all first responders were from Waukegan, c.) York's statement that he spoke to 911 dispatchers and d.) the Waukegan municipal numbers on York's phone minutes after the incident. Det. Sarabia then lied to the first grand jury, telling it that he searched York's cell phone and there was "no indication" that York ever called 911 and that he even checked the call logs.

Defendant should not get any mileage for his return trip to the Grand Jury after York's criminal defense attorneys took the obvious step of subpoenaing Waukegan for the 911 calls. That after the fact patch job was no more than a classic professional posterior protection maneuver. Regardless, such actions could support a jury's conclusion that Det. Sarabia conducted a bad-faith incomplete investigation that resulted in the initial criminal prosecution by failing to obtain the exculpatory Waukegan 911 recordings or Waukegan 911 CAD Report. As outlined above, an officer "may not close his eyes to facts that would clarify the situation" and defeat probable cause for an arrest. *Young,* 987 F.3d at 645. Viewing this evidence in the light most favorable to the

Plaintiff, there is a reasonable inference that Det. Sarabia played a significant role in the criminal prosecution of the Plaintiff.

In a similar vein, Det. Sarabia cannot escape liability for malicious prosecution for his significant role in the murder prosecution against York with his false testimony. *Ewing*, 60 F. Supp. 2d at 818; *Mahoney,* 976 F2d at 1057. As Lake County Judge Shanes outlined in his order dismissing the indictment, York's due process rights were violated by Sarabia's false and misleading testimony. (SOAF No. 47-55). But for Det. Sarabia's significant role as the lead investigator, York would not have faced prosecution for the crime of First Degree Murder that Sarabia knew he did not commit.

Defendant next contends that summary judgment should be granted on Plaintiff's malicious prosecution claims because there is no evidence of malice. Like most of his other arguments, Defendant predicates this entire argument on a parochial view of the law and facts, arguing that malice could not be present as a matter of law because he made self-serving statements he did not believe in the criminal charges, had no motive to frame York, and did not know him prior to this incident. However, malice does not mean ill-will, spite or hatred toward the person prosecuted. *Turner v. Chicago*, 91 Ill. App. 3d 931 (1980). In fact, malice may be shown where the defendant proceeded with a prosecution for some improper motive. *Aguirre v. City of Chicago*, 382 Ill. App. 3d 89,887 N.E.2d 656, 663 (2008). The absence of probable cause establishes an inference of malice by defendants. *Williams v. City of Chicago*, 733 F.3d 749, 760 (7th Cir. 2013); *Aguirre,* 382 Ill. App. 3d at 97.

Here, there is ample evidence from which a jury could infer malice. Obviously, providing incomplete or false information to prosecutors to establish probable cause in order to facilitate felony charges supports the presence of malice. *Aguirre,* 382 Ill. App. 3d at 99; *see also Gonzalez*

*v. City of Elgin*, 578 F.3d 526 (7th Cir. 2009); *Chagolla v. City of Chicago*, No. 07 C 4557, slip op. N.D. Ill. February 8, 2012)(rejecting summary judgment; jury could conclude defendants acted with malice by falsifying charges against plaintiff). Viewing this record in the light most favorable to Plaintiff, a reasonable jury could infer malice from: 1.) the improper motive of trying to quickly close a media case involving a North Chicago alderwoman's family; 2.) Det. Sarabia's attempt to shift all communication with the LCSAO Felony Review Unit to Det. Rollins; 2.) Sarabia's omission of the evidence of York's 911 calls in his phone from his presentation of evidence to LCSAO; 3.) his inexplicable decision to intentionally stick his head in the sand and not obtain the actual 911 evidence from Waukegan; and 4.) falsely claiming he "didn't know anything about the gunshot" that he knew without a doubt came from Wilson's hand, all in order to secure felony false charges against York.

**E.     Defendant Sarabia is not entitled to qualified immunity as a matter of law**

Defendant Sarabia argues that he is entitled to qualified immunity because a.)  at a minimum, "arguable probable cause" existed for Plaintiff's arrest for violating 625 ILCS 5/11-401 because York did not report to a police station and b.) Sarabia "consulted" with prosecutors before bringing any charges. This Court should summarily reject these arguments, which are set forth purely from the Defendant's perspective and not viewed properly in the light most favorable to Plaintiff. As outlined above, there are questions of fact regarding the essential element of York's knowledge of injury to another required for a 11-401 offense. As for the LCSAO "consultation," there are even more questions of fact regarding who was involved in any such consultation, where and how it took place, and exactly what evidence was presented; all of these questions preclude summary judgment rather than establish qualified immunity as a matter of law.

Initially, this Court cannot conclude the Defendant is entitled to qualified immunity because there are material facts in dispute. *Apostol v. Landau,* 957 F.2d 339, 342-43 (7th Cir. 1992). "If the parties were disputing who did what and when, any questions of qualified immunity would have to wait until those fact issues were resolved." *Meyer v. Robinson*, 992 F.2d 734, 737 (7th Cir. 1993). When facts are in "hot dispute," officers cannot seek refuge behind a claim of qualified immunity. *Dufour-Dowell v. Cogger*, 152 F.3d 678 (7th Cir. 1998). Further, an officer's consultation with the state's attorney does not entitle an officer to summary judgment on qualified immunity grounds when the defendant officer provided the state's attorney with the same version of events that is contested by the plaintiff. *Crews v. Martinez*, 19-cv-3277, 2022 WL 972289 *1, *6 (N. D. Ill. March 31, 2022).

Here, there are questions of fact regarding who presented the case to the LCSAO's Felony Review Unit. As discussed above, viewing the record and all reasonable inferences in the Plaintiff's favor, Det. Sarabia conducted a "roundtable" presentation of the evidence to the Felony Review ASA, but then subsequently tried to shift blame to Det. Rollins and make it appear he had no role in the charging process after this lawsuit was filed. A further inference from this evidence is that Det. Sarabia did so because he knew his presentation omitted critical facts regarding the multiple Waukegan municipal numbers on York's phone that corroborated York's statement that he called 911.

In addition, there are questions of fact regarding Det. Sarabia's failure to obtain the critical evidence from Waukegan that would have definitively established York's 911 calls and that York was reporting a shooting by Wilson. During his interview, York was repeatedly told that the existence of the 911 calls were "the most important" thing for him. Yet Sarabia, the lead detective who knew the 911 calls went to Waukegan, never even attempted to get this easily obtainable

critical evidence. Whether this was a simple oversight by the veteran detective or an intentional act to ensure Plaintiff's prosecution is for a jury to decide. The record here leaves ample room for a jury to find that the Det. Sarabia not only violated Mr. York's' constitutional rights but did so in ways sufficiently egregious such that a "reasonable officer" would certainly understand them to constitute violations. *BeVier v. Hucal*, 806 F.2d at 123, 127 (7th Cir. 1986)127 (officer not entitled to qualified immunity because he acted unreasonably in failing to ask a few questions which would have given him important information). Qualified "immunity does not extend to misconduct '[w]here the probable cause is based solely on information the officer knew to be false or would have known was false had he not recklessly disregarded the truth.' *Olson v. Tyler*, 771 F.2d 277, 282 (7th Cir. 1985). As such, summary judgment based on qualified immunity is inappropriate.

## CONCLUSION

Based on the arguments and supporting case law outlined above, Plaintiff Vincent York respectfully requests this Honorable Court enter an order denying Defendant North Chicago Detective Jose Sarabia's Motion for Summary Judgment.

Respectfully submitted,

*/s/ Jeffrey J. Neslund*
Jeffrey J. Neslund

Law Offices of Jeffrey J. Neslund
134 N LaSalle Street, Suite 444
Chicago, IL 60602
(312) 223-1100

Rob Robertson
Robertson Duric
One North LaSalle Street, Suite 300
Chicago, IL 60602
(312) 223-8600
*Attorneys for Plaintiff*

21